UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                  No. 1:24-cr-00118

v.                                  Hon. Robert J. Jonker
                                  United States District Judge

DAVID MARK BARTELS,

                Defendant.
_____/

*"Anyone who looks at these horrible pictures of me or anyone else are abusing us. Anyone who looks is keeping my pain going for the rest of my life."[1]*

## <u>UNITED STATES' SENTENCING MEMORANDUM</u>

The United States of America, by and through its undersigned counsel, hereby submits its position on the sentencing of David Mark Bartels ("Defendant"). Defendant has pled guilty to Possession of Child Pornography by a Person Employed by the Armed Forces Outside of the United States in violation of Title 18, United States Code, Sections 2252A(a)(5)(A) and 3261. The applicable Guidelines range has been correctly calculated in the Presentence Investigation Report ("PSR") as 78 to 97 months, constrained by the statutory maximum of 20 years. *See* ECF No. 25, PageID.91, ¶ 80.

For the reasons that follow, the United States respectfully submits that a Guideline sentence is sufficient but not greater than necessary to effectuate the statutory sentencing factors under 18 U.S.C. § 3553(a).

---

[1] Statement of a victim identified in an image found in Defendant's possession.

## I.    **FACTUAL BACKGROUND**

Defendant was employed by a military contractor and stationed at Guantanamo Bay from May 2019 to January 6, 2023. *Id.*, PageID.88, ¶ 57. On December 9, 2022, law enforcement noticed that Defendant had used PayPal to purchase child pornography between November 7, 2019, and January 16, 2022. *Id.*, PageID.82, ¶ 11. During a voluntary, non-custodial interview conducted by the Naval Criminal Investigative Service on January 5, 2023, Defendant confirmed that he owned the PayPal account, said that it been locked for at least one year, and admitted to purchasing collections of child pornography while he was stationed at Guantanamo Bay. *Id.*, PageID.82, ¶ 12-15.

On the same day as his interview, a Command Authorized Search and Seizure was executed at his residence. ECF No. 25, PageID.82, ¶ 16. Forensic review of the eighteen electronic devices seized from Defendant that day revealed child pornography on his 5TB External Hard Drive. *Id.*, PageID.83, ¶ 17. Within the folder "\NSFW\Nope\Dont open\You were Warned\Deeper\" on the 5TB External Hard Drive were 41,026 images and videos. *See* Exhibit A. Of the 41,026 files submitted to the National Center for Missing and Exploited Children, 285 known victims were identified and Defendant possessed over 1,500 images and videos of them. ECF No. 25, PageID.83, ¶ 18. Included within the material were images of minors that had not yet attained the age of twelve. Some of the files located on Defendant's MSI Laptop are:

     i.      A 12 minute 57 second video of a nude pre-pubescent female straddling an adult male. She performs oral sex on the male and then the camera does a close-up of her vagina and anus.

     ii.     A 50 second video of a clothed 3-to-4-year-old toddler performing oral sex on an adult male.

     iii.   A photo of two nude pre-pubescent females lying opposite on a brown couch with their legs spread and up in the air. Their vaginas are near each other and exposed to the camera.

*Id.*

Review of the activity on his laptop demonstrated that several of the images and videos were viewed by the user. *See* Exhibit A. Additionally, TOR[2] was installed on Defendant's laptop, and he had bookmarked a TOR website containing child pornography videos on February 10, 2021. *Id.*

     i.      One of the preview videos is of a clothed sleeping toddler whose underwear has been pulled down. An adult male is inserting his penis into her mouth. Tags on the video include "drugged underage rape" and "tied up child."

---

[2] TOR, also known as the Onion Router, is a free and open-source software that provides an anonymous way to browse the internet. It does this by routing your internet traffic through a series of servers, or nodes, around the world, hiding your IP address and location from websites and other trackers. Use of TOR allows a user to access the Dark Web. The Dark Web is a hidden part of the internet, not accessible through regular search engines.

ii.    Another preview video is of a nude toddler straddling an adult male. His penis is against her vagina, which is exposed to the camera. Tags on the video include "Pedofamily" and "Pedodad."

Bartels agreed to pay restitution to the victims of this charge. ECF No. 17, PageID.38-39, ¶ 5. Specifically, he agreed that restitution "is not restricted to the victims or conduct alleged in the count to which Defendant is pleading guilty and includes all losses and victims of Defendant's sexual exploitation of minors, including all victims of uncharged relevant conduct." *Id*. Nineteen of the possession victims have submitted restitution requests for a total of $151,500. The requests are discussed in detail below.

## II.    <u>STATUTORY PENALTIES AND GUIDELINES CALCULATIONS</u>

The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 2252A(a)(5)(A) and 3261, is the following: 20 years of imprisonment, a lifetime period of supervised release, a fine of $250,000, and a mandatory special assessment of $5,000.

As the Court is aware, although the Sentencing Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing, a court "must first calculate the Guidelines range" applicable to Defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also Gall v. United States*, 552 U.S. 38, 49-50 (2007).

Here, the PSR calculated the total offense level for Defendant under the Guidelines as follows:

| Guidelines Calculation | |
|---|---|
| Base offense level because the Defendant was convicted of 18 U.S.C. § 2252(a)(4)(B) (U.S.S.G. § 2G2.2(a)(1)). | **18** |
| Since the material involved a prepubescent minor or a minor who had not attained the age of 12, two levels are added. (USSG §2G2.2(b)(2)). | **+2** |
| Since the offense involved material that portrays sexual abuse or exploitation of an infant or toddler, four levels are added. (USSG §2G2.2(b)(4)). | **+4** |
| The offense involved the user of a computer or interactive service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material. (U.S.S.G. § 2G2.2(b)(6)). | **+2** |
| Defendant possessed 937 images and 572 videos containing CSAM. Since the offense involved 600 or more images, five levels are added. (USSG §2G2.2(b)(7)(D)). | **+5** |
| Defendant demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. (USSG §3E1.1(a)). | **-2** |
| Defendant assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. (USSG §3E1.1(b)). | **-1** |
| **Total offense level** | **28** |

*See* ECF No. 25, PageID.91, ¶ 80.

Defendant has demonstrated acceptance of responsibility for this offense and is therefore entitled to a two-level decrease in offense level under U.S.S.G. § 3E1.1(a). This two-level decrease is correctly reflected in the PSR. *Id*., PageID.86, ¶ 37. Moreover, Defendant assisted authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, entitling him to a one-level decrease in offense level under U.S.S.G. § 3E1.1(b). This

one-level decrease is correctly reflected in the PSR. *Id.*, PageID.86, ¶ 38. Defendant's criminal history includes one charge for Operating While Intoxicated – First Offense. *Id.*, PageID.86, ¶ 43. Defendant was compliant with imposed conditions of supervision and was successfully discharged from probation on July 12, 2018. *Id.* Defendant's criminal history score is one, resulting in a Criminal History Category I. *Id.*, PageID.87, ¶ 44.

Based on a total offense level of 28 and a Criminal History Category I, Defendant's Guidelines sentencing range is 78-97 months, constrained by the statutory maximum of 20 years. *Id.*, PageID.91, ¶ 80. Neither party objects to the guidelines scoring.

## III.    <u>SECTION 3553(a) FACTORS</u>

Imposing a sentence in this case requires the consideration of factors enumerated in 18 U.S.C. § 3553(a). *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011) (citing cases). Specifically, the Court must endeavor to impose a sentence that is "sufficient but not greater than necessary" to achieve the statutory goals outlined by Congress. *See* 18 U.S.C. § 3553(a). The Court should therefore look to the nature and circumstances of the offense and the history and characteristics of Defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to afford adequate deterrence to criminal conduct; and the need to protect the public from further crimes of Defendant. *Id.* As explained below, consideration of these factors suggests that a Guideline sentence is appropriate in this case.

**A. The nature, circumstances, and seriousness of Defendant's offense.**

The possession of child pornography is a serious offense and certainly not a victimless crime. The continued, irreparable harm that Defendant has caused to the victims of his offense warrants a term of incarceration within the Guidelines range. As the Supreme Court has recognized, all child pornography crimes "produce[] concrete and devastating harms for real, identifiable victims." *Paroline v. United States*, 572 U.S. 434, 457 (2014). The mother of one victim identified in the images possessed by Defendant states that her daughter has a "life-long sentence", and that the "awareness that her sexual abuse is memorialized via the Internet will forever be devastating." Another identified victim wrote that she is revictimized "every time one of these images or videos is viewed, downloaded, or sent to another individual." The possession of child pornography is "'an offense that has no finite ending.'" *United States v. Demma*, 948 F.3d 722 (6th Cir. 2020).

A defendant convicted of possession of child pornography is not a mere bystander to the abuse of children. The Sixth Circuit recognizes that "[k]nowing possession of child pornography . . . is not a crime that happens to a Defendant." *Demma*, 948 F.3d at 730 (citing *Bistline I*, 665 F.3d 758, 765 (6th Cir. 2012)). Here, Defendant made a series of choices to repeatedly locate, purchase, and view child pornography. Defendant's "affirmative purchase of child pornography contributed to the creation or expansion of a market for child pornography." *U.S. v. Robinson*, 778 F.3d 515, 517 (6th Cir. 2015). By paying for access to collections of child pornography, Defendant incentivized abusers to produce the material.

In this case, compared to most offenders, Defendant's conduct was more egregious. Out of a collection of over 40,000 images and videos of suspected child pornography, Defendant possessed over 1,500 identified files. Statistics provided by the United Staes Sentencing Commission state that "slightly less than half (43.9%) of possession offenders had images or videos of infants (19.4%) and toddlers (24.5%)," but Defendant had such images. *See* United States Sentencing Commission, <u>Federal Sentencing of Child Pornography: Non-Production Offenses</u> 31 (2021). Only 12.3% of possession offenders use the Dark Web, but Defendant employed such tactics. *Id*. at 35. A sentence within the Guidelines range is appropriate given the seriousness of and circumstances surrounding Defendant's offense.

### B. The need to promote respect for the law and to afford adequate deterrence to criminal conduct.

A guidelines sentence is sufficient but not greater than necessary to deter Defendant and others from engaging in this conduct in the future. Defendant was aware of the illegality of his conduct. In his interview on January 5, 2023, he stated he knew there would be legal ramifications if he were caught. To avoid responsibility for his conduct and to protect his collection of child pornography, Defendant used TOR to conceal his online activities. This demonstrates a blatant lack of respect for the law. Not only did Defendant knowingly violate the relevant statute, but he also took action to circumvent detection of his conduct. He did so while employed on a secure military base. When asked by law enforcement if there was anything he could have done to avoid this offense, Defendant stated that he "should have taken more time to contemplate his decisions." *Id*., PageID.85, ¶ 25. Defendant, however, did not

simply make one spur of the moment choice. Rather, he repeatedly contemplated and made the decision to actively seek out, purchase, and access child pornography over a months-long period. As such, it is imperative that Defendant's sentence reflect the obvious need for specific deterrence.

The Sixth Circuit has repeatedly held that "general deterrence is crucial in the child pornography context." *United States v. Schrank*, 768 Fed.Appx. 512, 515 (6th Cir. 2019) (citing *United States v. Robinson*, 778 F.3d 515, 520-21 (6th Cir. 2015) (editorial mark omitted)). The court recognizes that the crime of possession of child pornography is perceived as "easy to commit and difficult to detect" because the offenses "generally take place in private." *U.S. v. McElheney*, 524 F.Supp.2d 983, 1006 (E.D. Tenn. 2007). Defendant's sentence should communicate to would-be and current offenders the reality that the possession of child pornography is not attenuated from the abuse of the minor used to produce the material. A Guideline sentence would achieve this goal.

## C. The history and characteristics of Defendant.

Defendant's history as related by the PSR demonstrates a stable family history without sexual, physical, or emotional abuse. *Id.*, PageID.87-89, ¶ 49-66. Defendant is in good physical health and does not have any significant mental health problems. *Id.*, PageID.87, ¶ 61-62. Defendant earned a high school diploma and some college credit, although he did not obtain a college degree. *Id.*, PageID.89, ¶ 67-68. He reported having specialized training related to fuel systems and has a commercial driver's license. *Id.*, PageID.90, ¶ 69. Defendant enlisted in the USAF in December

2009 and received an honorable discharge in 2015. *Id*. In short, Defendant's characteristics provide no factors that would mitigate the offense conduct.

He could have used his education to find ways to battle his sexual interest in children or he could have used his salary to find treatment or assistance with combatting his proclivity. If there was ever a defendant that had the time, resources, and opportunity to reflect on his choices and stop exploiting minors, this is such a defendant. Instead, he did nothing but feed his unsatiable desire to harm children.

## IV.    SPECIAL ASSESMENTS UNDER THE JUSTICE FOR VICTIMS OF TRAFFICKING ACT (JVTA) & THE AMY, VICKY, AND ANDY CHILD PORNOGRAPHY VICTIM ASSISTANCE ACT (AVAA)

The Justice for Victims of Trafficking Act (JVTA) imposes a mandatory assessment of $5,000 on any non-indigent Defendant convicted of, among other offenses, possession of child pornography. The § 3014(a) assessment is payable after Defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim compensation. *See* 18 U.S.C. § 3014(b) & (e). *See* 18 U.S.C. § 3014.

While the statute is silent as to how to determine indigence, courts have treated the imposition of this assessment like the imposition of other post-conviction assessments, where "[t]he Defendant bears the burden of proving both his inability to pay at the time of sentencing and that he is not likely to become able to pay a fine upon his release from his term of imprisonment." *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017) (internal citations and quotation marks omitted). Relevant factors to consider in this determination include a Defendant's future earning

potential, assets, educational background, employment history, age, and physical condition. *See United States v. McMiller*, 954 F.3d 670, 675 (4th Cir. 2020) ("[W]e agree with our sister circuits that a district court may consider a Defendant's future earning potential when determining his ability to pay an assessment under 18 U.S.C. § 3014(a)." (citations omitted)); *see also United States v. Mann*, 770 F. App'x 649, 650 (4th Cir. 2019).

Defendant has no dependents and over $156,000 in assets, including stocks, cash and money market accounts. *Id.*, PageID.91, ¶ 76. Defendant has assets sufficient to make a $5,000 lump sum payment at the time of sentencing, or on a reasonable schedule thereafter, which will still leave him a comfortable cushion to draw on during his imprisonment and eventual release.  In addition, as the PSR outlines, Defendant poses no health concerns that would prevent him from making payments based on future earnings while incarcerated or while completing any term of supervision. *Id.*, PageID.89, ¶ 61-62. From 2019 through 2023, Defendant was employed full time as a fuel systems operator for Maytag Aircraft Corporation, Guantanamo Bay, Cuba, earning a base salary of $60,000 per year. *Id.*, PageID.90, ¶ 72. Immediately prior to his incarceration, Defendant was earning $22.50/hour working in waste management at Republic Services, Jenison. *Id.*, PageID.90, ¶ 71. Accordingly, the United States respectfully requests that the Court find Defendant non-indigent and impose the mandatory $5,000 special assessment under 18 U.S.C. § 3014.

On December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA). The Act instructs that, in addition to any restitution or other special assessment, courts "shall assess not more than $17,000 on any person convicted of . . . [an] offense under section 2252(a)(4) or 2252A(a)(5)" 18 U.S.C. § 2259A(a)(1). Assessments collected under this statute are deposited in the Child Pornography Victims Reserve, which provides monetary assistance to victims of trafficking in child pornography, *see* 18 U.S.C. §§ 2259(d), 2259B, and shall be paid in full after any special assessment under 18 U.S.C. § 3013 and any restitution to victims of Defendant's offense, *see* 18 U.S.C. § 2259A(d)(2). In determining the amount to be assessed under 18 U.S.C. § 2259A, courts should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and the guidance in 18 U.S.C. § 3572 for the imposition of fines. *See* 18 U.S.C. § 2259A(c). The United States respectfully requests that the Court impose a reasonable special assessment under 18 U.S.C. § 2259A, in addition to the $100 mandatory special assessment for his felony conviction pursuant to 18 U.S.C. § 3013.

## V.    <u>RESTITUTION AND PAYMENT</u>

Restitution is mandatory under 18 U.S.C. § 2259 "for any offense under [Chapter 110]." 18 U.S.C. § 2259(a). Further, under 18 U.S.C. § 3663(a)(3), the Court may order Defendant to pay restitution "to the extent agreed to by the parties" in the plea agreement. *See United States v. Tunning*, 69 F.3d 107, 116 (6th Cir. 1995); *United States v. Sizemore*, 850 F.3d 821, 827 (6th Cir. 2017) (stating that defendant's promise to pay restitution as part of agreement pursuant to 18 U.S.C. § 3663(a)(3)

creates independent authority for restitution order that does not require analysis of defendant's ability to pay). Defendant further agreed that the Court would use 18 U.S.C. § 2259 to calculate restitution.

Subparagraph (b)(1) of § 2259 provides that "[t]he order of restitution under this section shall direct the defendant to pay the victim . . . the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). The "full amount of the victim's losses" includes any costs incurred by the victim for, among other things, medical services, lost income, attorney's fees and "other costs incurred," and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(c)(2). These costs include the future costs of treatment and therapy. *See, e.g.*, *United States v. Gamble*, 709 F.3d 541, 545 (6th Cir. 2013) ("'ascertainable future losses are included within the concept of "full amount of the victim's losses"') (quoting the district court); *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001) (joining other circuits in holding that victims may be compensated for the anticipated future costs of psychological treatment under 18 U.S.C. § 2259).

Once imposed, orders of restitution under § 3663 "shall be issued and enforced in accordance with section 3664." *Id*. § 3663(d). Pursuant to § 3664 (f)(1)(A) "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of defendant." Section 3664 provides that issues related to restitution "shall be resolved by the court by the preponderance of the evidence. . . . [t]he burden of demonstrating

the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e).

The United States has received nineteen restitution requests at the time of this filing, which are outlined below:

| Victim Series: | Restitution Request: |
|---|---|
| Masha River | $5,000 |
| BluesPink1 | $10,000 |
| 2crazygurls | $10,000 |
| JBNFlowers1 | $10,000 |
| Aprilblonde | $10,000 |
| Sweet White Sugar | $7,500 |
| FaceBaby | $10,000 |
| Jenny | $10,000 |
| ZooFamily1 | $3,000 |
| Vicky | $10,000 |
| Tara | $10,000 |
| Marineland1 | $10,000 |
| Jan_Socks2 | $7,500 |
| Jan_Socks3 | $7,500 |
| Jan_Socks4 | $7,500 |
| Best Necklace | $7,500 |
| RedGlassesCry | $3,000 |
| HG1 | $3,000 |
| SparklingVelvet | $10,000 |
|  |  |
| **Total:** | **$151,500** |

Victims have a right to "full and timely restitution as provided by law." 18 U.S.C. § 3771(a). The Court may order payment of "a single, lump sum payment, partial payments at specified intervals, in kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A). At the time of drafting this memorandum, the government had received at least eighteen requests for restitution from victims. Although the final amount of restitution is

imposed at the Court's discretion, with 19 victims and a $3,000 minimum floor, the government anticipates Mr. Bartels will have at least a $57,000 restitution balance owing at the time of sentencing, in addition to a likely JVTA assessment of $5,000 and an additional special assessment. Defendant has no dependents and over $156,000 in assets, including stocks, cash and money market accounts. Defendant has assets sufficient to make at least a $57,000 lump sum payment at the time of sentencing, which will still leave him a comfortable cushion to draw on during his term of imprisonment and eventual release.  Accordingly, the government requests that the Court order Defendant to pay at least $57,000 in restitution to the victims at the time of sentencing in addition to making reasonable minimum monthly payments toward any special assessments imposed during his time of incarceration and supervision.

### A. Defendant's Causal Role in the Victim's Loss

The Supreme Court has addressed the issue of restitution under § 2259 for defendants convicted of possessing images of child pornography. *See Paroline v. United States*, 572 U.S. 434 (2014). The Court's opinion resolved two related issues in cases involving a defendant "who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim." *Id.* at 449.

First, the Court held that a "proximate-cause requirement applies to all the losses described in § 2259." *Id.* at 448. With regard to causation-in-fact, the Court rejected a strict but-for causation requirement. *Id.* at 463. Instead, it is enough that

a defendant "was a part of the overall phenomenon that caused [the victim's] general losses." *Id*. at 457. This is true even if the victim is unaware of a particular defendant's conduct. *See id*. at 456 (noting that the victim was unaware of the defendant). The Court explained, "The cause of the victim's general losses is the trade in her images. And [the defendant] is a part of that cause, for he is one of those who viewed her images." *Id*. The Court further explained, "It is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured. . . . The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse—including [the defendant]—plays a part in sustaining and aggravating this tragedy." *Id*. at 457. As for proximate causation, the Court observed that "the victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child-pornography crimes." *Id*. at 449.

Second, the Court held that "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id*. at 458. Also, when "a defendant possessed a victim's images," "a victim has outstanding losses caused by the continuing traffic in those images," and "it is impossible to trace a particular amount of those losses to the individual defendant [through] a more traditional causal inquiry." *Id*. The Court rejected the victim's position that each and every defendant

should be held responsible for the full amount of her losses caused by "the conduct of thousands of other independently acting possessors and distributors." *Id.* at 455. Instead, "a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id.* at 459. The amount assessed to each defendant should be neither "severe" nor "token or nominal." *Id.* at 487. The Court noted that "[t]his cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." *Id.* at 459.

The Supreme Court provided some guidance on how to accomplish this task. First, a court should "determine the amount of the victim's losses caused by the continuing traffic in the victim's images." *Paroline*, 572 U.S. at 460. Second, a court should "then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id.* The Court stated that "it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount," but it noted a number of nonexclusive factors courts could consider in determining an appropriate amount of restitution. *Id.* These non-dispositive factors, which were intended only as "rough guideposts," include, but are not limited to:

- the number of past criminal defendants found to have contributed to the
- victim's general losses;
- reasonable predictions of the number of future offenders likely to be caught
- and convicted for crimes contributing to the victim's general losses;

- any available and reasonably reliable estimate of the broader number of
- offenders involved (most of whom will, of course, never be caught or
- convicted);
- whether the defendant reproduced or distributed images of the victim;
- whether the defendant had any connection to the initial production of the
- images;
- how many images of the victim the defendant possessed;
- and other facts relevant to the defendant's relative causal role.

*Id.* The Court further noted that the government "could also inform district courts of restitution sought and ordered in other cases." *Id.* at 462. Finally, the court may "then set an appropriate payment schedule in consideration of the defendant's financial means." *Id.* at 485.

In *United States v. Hargrove*, 714 F.3d 371 (6th Cir. 2013), a possession of child pornography case, the Sixth Circuit pointed out that a "defendant is not responsible for harm that occurred before the date of his offense." 714 F.3d at 375; *see also United States v. Gamble*, 709 F.3d 541, 554 (6th Cir. 2013) ("As a logical matter, a defendant genera cannot cause harm prior to the date of his offense."). This proposition is consistent with the Supreme Court's holdings in *Paroline* discussed above. *Hargrove* also noted that "[c]osts for the harms Hargrove proximately caused that are 'clearly traceable' to him—such as the victims' attorney's fees incurred in seeking restitution in this case—may be assessed directly to him." *Id.* Again, this is consistent with *Paroline*. Finally, *Hargrove* held that "where the court must allocate restitution for

aggregate harm caused by multiple defendants, the court may, as one option, apportion the restitution award using the formula described in the government's appellate brief and approved by this court in Gamble." *Id.* This holding is not inconsistent with *Paroline*.

In *United States v. Gamble*, 709 F.3d 541 (6th Cir. 2013), a possession and receipt of child pornography case, the Sixth Circuit held that it was reasonable for a district court to apportion restitution by first determining the relevant "pool" of each victim's provable losses that are not traceable to a single defendant. 709 F.3d at 554. The court may then determine how much of the pool a given defendant caused by excluding any losses incurred prior to the offense date and then dividing the remaining loss by the number of defendants convicted of possessing her image. *Id.* The Sixth Circuit noted that this approach was reasonable, but it was "not necessarily the only way to calculate restitution." *Id. Gamble* is also not inconsistent with *Paroline*, at least insofar as the above methodology does not "result in trivial restitution orders." *See Paroline*, 572 U.S. at 460.

On December 7, 2018, the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA), Public Law 115-229, was enacted. It changed, *inter alia*, the statute regarding restitution in child pornography cases. District courts must still "determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred." 18 U.S.C. § 2259(b)(2)(A). Then "the court shall order restitution in an amount that reflects the defendant's relative role in the causal

process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2)(B).

## B. Application to Defendant

The *Paroline* standards for causation-in-fact and proximate causation have been met in this case. By possessing the victims' images of sexual abuse and exploitation, the defendant was indisputably "part of the overall phenomenon that caused her general losses." *Paroline*, 572 U.S. at 457. As the Supreme Court recognized, the conduct of everyone involved in the trade and collection of child pornography "plays a part in sustaining and aggravating" the harm to the victim. *Id.* In addition, the Supreme Court noted that "every viewing of child pornography is a repetition of the victim's abuse." *Id.*

Each of the victims requesting restitution have provided detailed information documenting the nature and amount of the harm. *See* Exhibit B. The losses are recognized under the restitution statute, and Defendant's actions were indisputably a part of that harm. Therefore, the Court should award the victims an appropriate amount of restitution based on Defendant's relative role in the causal process that underlies the general losses, but no less than $3,000 for each victim.

In this case, Defendant possessed a vast collection of child pornography. According to the National Center for Missing and Exploited Children (NCMEC), Defendant possessed the following amounts of child pornography of each victim requesting restitution:

| Victim Series: | # of Media | Restitution Request: |
|---|---|---|
| Masha River | 1 video | $5,000 |
| BluesPink1 | 1 image | $10,000 |
| 2crazygurls | 9 videos | $10,000 |
| JBNFlowers1 | 5 videos | $10,000 |
| Aprilblonde | 6 images/9 videos | $10,000 |
| Sweet White Sugar | 11 videos | $7,500 |
| FaceBaby | 11 images | $10,000 |
| Jenny | 2 videos | $10,000 |
| ZooFamily1 | 2 videos | $3,000 |
| Vicky | 11 videos | $10,000 |
| Tara | 1 image/8 videos | $10,000 |
| Marineland1 | 1 video | $10,000 |
| Jan_Socks2 | 1 image | $7,500 |
| Jan_Socks3 | 1 image | $7,500 |
| Jan_Socks4 | 1 image | $7,500 |
| Best Necklace | 7 videos | $7,500 |
| RedGlassesCry | 2 videos | $3,000 |
| HG1 | 13 videos | $3,000 |
| SparklingVelvet | 7 videos | $10,000 |
| | | |
| **Total:** | | **$151,500** |

Defendant is one of dozens – possibly even thousands – of people who have collected material of these victims. The number is impossible to know, but NCMEC has catalogued these victims as known victims of child pornography series from other images submitted during other investigations, indicating that all of the above victims' images are indeed circulating on the internet and that each notification to the victims of a new defendant being located causes additional harm to them.

The Court has before it restitution requests in the amount of $151,500. The government defers to the Court on the final determination, other than that it should

comply with the $3,000 statutory minimum for each victim who has requested restitution.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court impose a guidelines sentence, which will effectuate the purposes of 18 U.S.C. § 3553(a), and order restitution as required.

Respectfully submitted,

ANDREW B. BIRGE
Acting United States Attorney

Dated: April 25, 2025

/s/ *McKenzie Hightower*
McKenzie Hightower
Trial Attorney, DOJ

/s/ *Doaa K. Al-Howaishy*
DOAA K. AL-HOWAISHY
Assistant United States Attorney